May it please the Court, Gary Gans for Appellant Esplanade Productions. This is a critical case for riders. Their ability to protect their original creative expression is at stake. It is their life pursuit and their livelihood that is an issue. This is not a typical case. It is atypical because it is based on artwork, character designs, and a treatment, not a full-blown screenplay. It is atypical because having access, Disney used the same never-used-before dialogue, The Elephant Mine, and the same never-used-before title, Zootopia, to express the same theme. And it is atypical because of the number of similarities, non-random similarities, across the elements. On this appeal, it is established that Esplanade owned a valid copyright in an original work of expression, that Disney had access, and that Disney copied to some extent. So the issue is, how much of a rider's expression can Disney appropriate without compensation or credit? And we think the issue is one for the trier of fact. Now, recent Ninth Circuit authorities, including the authorities we cited in our 28 J letters, highlight two fundamental errors. The first is that the district court determined substantial similarity on a motion to dismiss, using subjective judgment to apply the objective test, without a full record and without expert testimony. And second, it used the wrong analysis in doing so. In a concurring opinion in Astor White, Judge Wardlaw wrote that substantial similarity is, quote, uniquely suited for determination by the trier of fact, and dismissible for discovery is, quote, virtually unheard of. And then echoing Justice Holmes about judges evaluating art, Judge Wardlaw emphasized the importance of expert analysis. Now, these principles are important here, even more so than in most cases. Well, there must be, even in your view, I would think, a point past which expert testimony is not required. You know, if someone writes a spy thriller and what they're claiming was infringing was, you know, Goldilocks and the Three Bears, there'd be no need for expert testimony. So it seems to me to beg the question, because in order to determine whether expert testimony and more discovery and so on is required, it seems to me there has to still be a threshold showing that there's enough substantial similarity to get you to that point. So how does that fit in? Yes, let me address that. First of all, unlike the hypothetical that Your Honor posed, here we know that there's copying. They copy the title and the dialogue. And the title, there is a state law claim remaining for the theft of title question. Yes. Okay. But that's not protectable under copyright law? It's not independently protectable. Correct. But here, the reason this case is different in terms of expert testimony is because the works that are the basis of the claim are not targeted to a general audience. They are character designs and a treatment. And character designs, it's not the same as comparing art. These are designs for animals to have human characteristics, human character traits. Is that new? I mean, you know, Smokey the Bear has been around a long time, and there are a lot of animal-slash-anthropomorphic creatures that have been in children's films and every form of expression for decades. Yes, but I think the point I'm trying to make is that expertise is particularly required when you're not just comparing a photograph of one animal to another or a drawing or an illustration of one animal to another. Well, here they're entirely different animals, for one thing. Well, they are, but identity is not required. We're only required to show substantial similarity. And here we have substantially similar, we believe, designs. And the need for expertise is that these designs are used to create characters. They're not just pictures of animals. And I think that that's different and heightens the need for expert testimony. What kind of expert would you bring in? A character designer, somebody who designs characters for animation. You're talking about somebody who would come in to talk about the cartooning itself? Talk about how these illustrations create character traits and illustrate conflicts and how that is similar to how the same types of designs worked in the movie itself. So the amicus, in this case, talks about movies being produced for a general audience, the craft of writing a screenplay is technical, layered, and nuanced. Can you give us an example of where expertise is necessary to understand the properties of the property that are found and said to be copied in the movie? Yes. In Astor, White, Judge Wardlaw talked about expertise being particularly important in comparing a treatment to completed work. In this case, not only do we have artwork, but we have a treatment, which is not a full-blown screenplay. And so in the treatment, there are, for example, three character arcs, or three plot points. One is the character arc of the main character. Another one is the plot about bullies, the reformed bullies. And another one is about a small prey animal who plots to overthrow the natural power structure. The plot relates to dialogue, the elephant line. That relates to the theme. That relates to the title. All of those relate to character. And an expert could look at a treatment and say, this is how motion pictures are made. You take elements that are expressed in a treatment, not full-blown, but you take these elements that are expressed here and you develop them, just like you develop the designs, into characters, into a story, into a full-blown motion picture. I have a question for you about that, because the two things that are obvious without expert testimony are the title and the one sentence about being an elephant. If you want to be an elephant, be an elephant, or approximately that line. I want you to assume for the sake of this question that there is nothing else in common between the expressions in the treatment and the character drawings and so on and the Disney movie. I know you don't agree with that. I just want you to assume that. What would be the result? Is that enough where you have an hour-and-a-half to two-hour movie for substantial similarity? It is certainly enough at the pleading stage. One of the comments in the district court's order was how one line is really not enough compared to a two-hour movie. But the analysis is the substantiality to the plaintiff's work. And the district court wrote a subsequent opinion in which he expressed that there is no right line and one line can be enough. And there are other cases also that say the one line can be enough. But I think that the bottom line here is this is not something that can be decided on the pleadings. Let me give you an illustration as to the elephant line, because what the court did was held that this is really generic. It reflects a common sentiment. Anybody can be anything. And this is the signature line of both works. So this is qualitatively important, particularly to the plaintiff's work. But what the court did not understand is that the line is ironic. There is this zootopian, utopian ideal that anyone can be anything, that anyone can't be an elephant. And so the theme is actually different, and the line is actually different from what the court perceived. And an expert, again, can come in and talk about elements that may not be apparent to a lay person, but an expert can explain them and explain how they're similar and explain how important they are and substantial they are to the plaintiff's work. So we don't think it's proper to dismiss on the pleadings, given the artwork, given access, given the copying that we know about. And as Judge Wardlaw's point about discovery, there are two elements of copyright infringement, ownership and copying. Copying can be proved either by substantial similarity and access, but alternatively by direct evidence of copying. And here we know that the elephant line and the title are the same, and we've alleged, we think that the character designs show copying as well. In fact, we've attached tracing exhibits to the complaint, to the First Amendment complaint. We think we have enough basis to conduct discovery as to direct evidence of copying. Do you think on the extrinsic prong that your argument that an expert is needed runs counter to the ordinary observer doctrine of Judge Hand? I do, because we're talking about character designs, not just a picture of one sloth and a picture of another sloth, period. Here we're talking about something that gets developed into actual characters, and same thing with the treatment. We think because of the development from the expression of the plaintiff into a movie, we think it's different. So expert is not always required. How does the court determine when an expert is required, or do you say that's left to the parties? Well, I think it gets back to what your Honor said. Is this something for a lay observer? I mean, the Rettmeister case is an example. Photograph one, photograph two, any of us can look at the photographs. But Rettmeister doesn't talk about experts one way or another. No, no, and I'm trying to distinguish that situation from what we have here with character designs and a treatment, which the lay observer has no basis for projecting how they relate into a full-blown motion picture. Did you wish to save some rebuttal time? You have about two minutes remaining. Yes, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Daniel Petruccelli with Anton Metlitsky for Appelese. We submit that the district court's dismissal of this case was indisputably correct. The court had before it both works. The court was able to readily compare both works. And on their face, methodically applying this circuit's eight-factor objective extrinsic test, the court was readily able to determine that the works as to their protectable elements are not substantially similar. I'm going to ask you the same question I asked Mr. Ganz, assuming that the only two commonalities are the title and the elephant line, is that potentially significant enough to be substantially similar? Not at all, Your Honor. As the court indicated, the title itself under copyright regulation 202.1 is not protectable, and that's in addition to the subject of the state court case. We're talking about one line, which the elephant line, which on excerpt of Record 121 from the plaintiff's work, it's not even clear that it's dialogue. It's simply expressing a belief that just one of the characters holds among his other beliefs, the character Hugo. Right. But in a treatment, it might become dialogue. Excuse me? If a treatment became full-blown, it could become dialogue? It could become a line, a spoken line, but under the Olson case put out by this circuit, you need extended similarity of dialogue, and that's assuming that the line is protectable, and the idea that an animal can be the biggest animal in the land, the elephant, or a person can be the best person they want to be is such a high-level abstract concept that that would take that idea and say the plaintiff now owns that idea, which is inimical to the interests and the purpose of the copyright law, which is to protect only concrete expressions. Themes and development of characters is, in fact, is it not, a much more opaque process than just it's one line, this is a two-hour movie, no substantial similarity. If that line has a carryover effect throughout the movie for themes or for development of the animal characters? Well, the court had the full movie before it, and the court had the plaintiff's work. The elephant line is 14 words out of 20,000 in the Disney movie, a 108-minute movie, and it's one out of many pieces of character description aspects of the plaintiff's work, so the court could tell whether, A, that line was protectable, and whether that line played such a dominant role in the plaintiff's work, which it clearly does not, that it would overwhelm all the other factors. On the issue of what an expert, for example, could contribute to this, in response to some of the questions that you put to Mr. Ganz, when it comes to literary works, we're dealing with a literary work here, and there's a well-established body of law in this circuit about literary works, plays, screen plays, treatments, books, and this is such a case, and we have this very specific eight-factor test of mood, pace, setting, sequence of events, dialogue, characters, themes, plots, because you're able to extract these objective criteria from the works, and it's readily apparent to any lay person. This is different from, for example, a computer source code case, like the Sega case, or even music cases, where experts may be helpful to assist a judge at the threshold, or even a jury, to understand the similarities, because music only has 12 notes in the scale, each of which is not independently protectable, and the magic of music is how they're configured in such a specific way. You're dealing with syncopation and rhythm, and tempo, and chord progressions, and orchestrations, and all these things that are not, they're not like words on a paper that anybody can read and see for themselves. Counsel, I had something else in Mr. Ganz's argument that I would appreciate your response to, and that is his argument that if discovery is permitted, there would be an opportunity to demonstrate direct evidence of copying, rather than going through the extrinsic test. What is your response to that argument? Well, for the purpose of this motion, copying, or access, I should say, even though it's disputed in reality, access is assumed, but as the Rentmeester course made clear, no amount of access can vary the standard Rentmeester explicitly rejected the argument made by the appellants, to the extent that they were suggesting that there was a lessening or a lowering of the standard for substantial similarity because there was access. So, is it your view that if there were, let's say, someone involved with the movie said, you know, I loved that title, and I loved that sentence about the elephants that, you know, was put in quotes in the treatment, I copied those two things. Same result? Yes, Your Honor, because copyright law, again, this is a hypothetical, because in reality, copyright law does not forbid all copying. Copyright law forbids that level of copying of concrete, specific expression that rises to the level of substantial similarity of two works as a whole. And that is an important balance that copyright law seeks to protect, and the court performs an incredibly important gatekeeping function in maintaining that balance, because the purpose of the copyright law is not only to confer on an author a very limited monopoly over a specific expression, a concrete expression, but to make sure that any ideas, any concepts embedded in those expressions are free to the public. In order for the court to perform this very important function that you describe, why isn't it important to have an expert who doesn't necessarily follow the ordinary observer's observation? But understands the development of a treatment? I'm really looking to Swirsky and Three Boys Music, and their apparent mandate that the extrinsic requirement has this analytic dissection with expert testimony. So, I think some cases, like the music cases, as I was explaining, because of the technical nature of music, and the fact that there are only 12 notes, each of which is not independently protectable, but constitute building blocks for an original work, an expert may be more useful, but not with literary works, especially not in this case, for this reason. The plaintiff's treatment, which is set forth at excerpts of record 119 to 145, on the one hand, it's extremely detailed. He has nine pages of single space, excuse me, eight pages of single space, concrete expression of the story of this movie, the story of this animator, Zeke. That is so detailed, there's nothing an expert's going to do to change that story. An expert can't just come in and take that story and develop it to something beyond what those words on the page say. That tells a very detailed story. It's a nine page, eight page single space treatment. On the other hand, if you look at the first six pages, they are not a treatment of a story, but they are rather simply descriptions of a character, various animal characters. Six pages of character descriptions, those are the first six pages. An expert can't come in and create a plot or create dialogue. An expert can't just make those things up. In other words, there's no discernible plot, there's no extended similarity of dialogue in there, and so there's nothing an expert can do. An expert deals with the matter that's before the court and helps explain to the court what it means if the court requires that assistance in cases, like I said, that are somewhat more technical, even in photo cases. That can be, it wasn't the case in Rentmeester, but there can be cases in photographs where you require expert testimony to help a court understand camera angle, shutter speed, and technical issues like that, the pose, the angle of the pose. But when you're dealing with two pieces of paper that are observable to any lay person, anybody can see that these two stories are nothing alike. As the court said, they are dissimilar in almost every material respect. And it's for this reason that the circuit has given the court eight factors that specifically apply to literary works. They are the court's province in the first instance to apply those factors. And if the work is not as a whole substantially as similar across the spectrum of those factors, it doesn't go forward. And to allow these cases just to go forward would erode the delicate balance that the copyright law seeks to effectuate. If you take a look at the last several pages of this plaintiff's work, from excerpt of record 142 to 145, that really tells you in a nutshell what this is about. These are teasers that give you a short synopsis of what the work is about. This is a work called Loony, and it's about this guy in Hollywood who goes berserk. This has nothing to do with Zootopia. The fact that there's another piece of this story that embeds some animated portion, the animated portion is not developed, there's no plot, there's no dialogue, there's a bunch of like adolescent animal characters running around in a zoo, doing raunchy things. That's about the most you can get from it. You know, chasing the female animal whose affections they are vying for. Anybody can see that that has nothing to do with the movie. This is the fact that there's one line of commonality. The law requires extended similarity of dialogue. There's no extended similarity of dialogue, even assuming that's a line. The title is not protectable, and you can't put them together to get over the line. You need far more commonality at the protectable level of expression in order to meet the justifiably high bar to pass this objective extrinsic test. Otherwise, all these cases would be going to the jury. Well, they could go to summary judgment. Nothing would change between now and summary judgment. We would be having the same discussion. Why is that? Well, because they might develop evidence of access. Let's just assume they, to your question, Judge Rayber, let's just assume they said Disney admitted, yeah, we copied it. That wouldn't change anything, because there has to be substantial similarity of protectable elements. We copied the title and we copied the one line. An expert isn't going to come in and fill in the missing plot of the animated portion. An expert can't come in and provide dialogue. An expert might be able to say, oh, well, you know, the writer could do this, the writer could do that, he could develop it this way, he could develop it that way. That isn't going to do anything. You have to compare the actual works as they currently exist, and the good news, at least from our standpoint, is that this work is sufficiently detailed, and we are aware of the synopses of them, as well as the specific artwork, which was not copied. So we have more than ample detail than you might see, and we know that this can never be substantially similar at any level. I take it it's not your position that a treatment is by nature too sketchy to support an infringement action. For instance, if the treatment had said, well, there's this little bunny who wants to become a cop, and gives just the outlines of what turned out to be the movie, even though it doesn't have the same dialogue or whatever, I would assume that you would concede that that could be an infringement. You could write a treatment for Zootopia, for example, that told that story, described those characters. You wouldn't need the dialogue, I'm not suggesting that, although if it had dialogue, that would be instructive. But, yes, you could have a treatment that could be infringing. I mean, a treatment that would pass... That would be infringed upon. Yes, it could be infringed upon, yes. No, I would not, we're not suggesting that. All I'm saying is that this is not such a treatment. It's because this treatment is sufficiently detailed, on the one hand, that we know it could never be the same, and an expert can't, you know, make stuff up, and we also know that it's so lacking in the way that it's described. In other respects, with respect to, for example, the missing plot of the whole animation part of this, I mean, the live action part of this, which is the dominant part, has nothing to do with Zootopia. Counsel, you've exceeded your time. We understand your position. I have. Thank you very much. Thank you. And, Mr. Gantz, you have some rebuttal time remaining. Thank you, Your Honor. Disney talks about the eight elements of the extrinsic test, and it completely misses the point of this case and why this case is different. The district court analyzed the protectable elements standing alone, filtering out all of the independently unprotectable material. How does it matter to us what the district court did? Don't we have to know for review? Yes, Your Honor. So we can ignore... So tell us why you should prevail. Yes. The selection, arrangement, and combination of elements, even unprotectable elements, is itself protectable. And so you cannot filter out the unprotectable material from that analysis, the analysis of the selection, arrangement, and combination of elements. And Rentmeester and Skidmore, the two recent Ninth Circuit cases, highlight that it is the combination, the selection and arrangement, and combination of nonprotectable elements that is protectable. The analysis of the arrangement has to relate to the nature of the expression and issue. And for every form of expression... Counsel, your formulation here is a pretty high level of abstraction. So you may want to come see if you can come down the ladder of abstraction just a little bit to show us why this is. Because selection, arrangement, and composition of elements could be said about just about anything. Okay. Here, in particular, you have themes such as, specifically, whether anyone can be anything. Combined with dialogue, in particular, the elephant line. Combined with characters, both drawings and character traits, that illustrate the Zootopia-Utopian conflict with the... Those are combined with story arcs. The story arc of the main character, the unusual story of the reformed bully, who has... Doesn't change his nature, but he changes. And the story of the small prey animal who plots to overthrow the natural structure. All of that is specifically combined in the treatment with settings. And all of that is combined and synthesized in the title, Zootopia, which, although not independently copyrightable, is a factor in the analysis. So the selection, arrangement, and combination of elements is itself original here and protectable. It is at least plausible that it's similar to Disney's Zootopia. And it is at least plausible that it is substantial to the treatment. The nature of a motion picture is not these eight elements standing alone in isolation. The nature of a motion picture is combining these elements into a whole, even unprotectable elements. Thank you, counsel. Thank you.
judges: Graber, Bybee, Arterton